<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

FREDERICK SANTIAGO,

    Plaintiff,

    v.

GOVERNOR PHIL MURPHY *et al.*,

    Defendants.

No. 25cv18479 (EP) (JRA)

**OPINION**

**PADIN, District Judge.**

Plaintiff Frederick Santiago, a parolee placed in a state-contracted residential reentry program, brings claims under 42 U.S.C. § 1983 and state law for deliberate indifference to his serious medical needs in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and false arrest in violation of the Fourth Amendment. D.E. 1 ("Complaint" or "Compl."). Plaintiff applies to proceed *in forma pauperis*, D.E. 1-1 ("IFP Application" or "IFP App."), and has established that he is financially eligible. Therefore, his application will be **GRANTED**. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must *sua sponte* screen the Complaint for dismissal if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; and (3) seeks monetary relief against a defendant who is immune from such relief.

The medical claims begin with Plaintiff's requests for medical care while participating in a residential reentry program. First, Plaintiff alleges that program personnel were deliberately indifferent to his serious medical needs during intake and subsequent care. Compl. ¶¶ 30–59. Second, Plaintiff alleges that various defendants retaliated against him in violation of the First

Amendment after he submitted grievances and complaints. *Id.* ¶¶ 67–76. Third, Plaintiff alleges that he was falsely arrested, and his parole was revoked in connection with a domestic violence accusation on June 17, 2025. *Id.* ¶¶ 92–103.

For the following reasons, the Court finds that Plaintiff's 42 U.S.C. § 1983 claims may **PROCEED** against Nurse John Doe Brown and Jane Doe Leonardo for Eighth Amendment deliberate indifference and against Tamahine Rivera and John Morgan for First Amendment retaliation, each in their individual capacities. The Fourth Amendment false-arrest claims and broader supervisory and municipal liability claims lack adequate factual support and will be **DISMISSED** *without prejudice* **in part** and *with prejudice* **in part**. Plaintiff's claims against the Newark Police Department and official-capacity claims for monetary relief against state officials will be **DISMISSED** *with prejudice*. The remaining claims will be **DISMISSED** *without prejudice*.

## I.     BACKGROUND

When screening a complaint for dismissal, courts must accept the factual allegations as true. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Plaintiff alleges the following facts. In or about October 2024, Plaintiff was on parole supervision. Compl. ¶¶ 30-34. Sergeant Morgan of the New Jersey State Parole Board ("Morgan") imposed a parole condition on Plaintiff that he may not have contact with his son's mother, Kimberly Sprague ("Sprague"). *Id.* ¶ 31. Plaintiff requested that Morgan lift this condition because it interfered with raising his son. *Id.* Morgan told Plaintiff he would have to do one of two things to lift the condition: attend counseling services or obtain full custody of his son. *Id.* ¶ 32. Plaintiff could not afford counseling services and did not want to end Sprague's parental rights. *Id.*

Around this time, Plaintiff was involved in a landlord/tenant dispute. *Id.* ¶ 33. The landlord

2

obtained a temporary restraining order ("TRO") against Plaintiff, but within forty-eight hours, a New Jersey Superior Court Judge found the TRO was unwarranted and quashed it. *Id.* Plaintiff alleges that these events were unrelated to substance abuse, but Morgan nonetheless ordered that Plaintiff immediately take part in an inpatient substance abuse program at Kintock Newark Halfway Back Facility ("the Facility"). *Id.* ¶ 34. Upon Plaintiff's admission to the Facility on October 8, 2024, Nurse Brown, the medical director, performed a medical screening and ordered a chest x-ray at University Hospital to screen Plaintiff for tuberculosis. *Id.* ¶ 35. Plaintiff told Nurse Brown that he injured his left arm two days earlier and was in severe pain. *Id.* ¶ 36. He believed his arm was broken and requested an x-ray for his arm. *Id.* Nurse Brown informed Plaintiff that the Facility did not provide medical care, and he could only access treatment if he had private insurance. *Id.* ¶ 37. Plaintiff pleaded for medical care or, alternatively, a medical discharge. *Id.* ¶ 38. Nurse Brown told Plaintiff that it was not the Facility's problem. *Id.* ¶ 39. For nineteen days, Plaintiff complained about his injured arm to the nurse who was dispensing medication. *Id.* ¶ 41. Nurse Brown and Site Director Leonardo ("Leonardo") directed all staff to deny Plaintiff a medical trip. *Id.* On October 29, 2024, Nurse Brown agreed Plaintiff could get an x-ray of his arm while he was at University Hospital for a mandated chest x-ray for tuberculosis. *Id.* ¶ 42. The x-ray revealed Plaintiff had a broken arm. *Id.* ¶ 44. Plaintiff was scheduled for a follow-up with an orthopedist on November 11, 2024. *Id.*

On November 1, 2024, Plaintiff slipped and fell in the shower at the Facility and injured his head and further injured his broken arm. *Id.* ¶ 45. Nurse Brown and Leonardo would not permit him to go to the emergency room. *Id.* While Plaintiff was crying in pain, Officer Bolesa, a parole officer stationed in the Facility, spoke with Sergeant Rivera ("Rivera"), and they cleared Plaintiff for a medical trip to the emergency room. *Id.* ¶ 47. At the hospital, Plaintiff was

3

diagnosed with a left radial-head fracture. *Id.* ¶ 48.

On November 8, 2024, Leonardo helped Plaintiff apply for medical insurance and informed him that the application process would take at least forty-five days. *Id.* ¶ 49. As a result, Leonardo informed Plaintiff that his follow-up appointment would not be honored because he did not have health insurance, and the staff member who handled outside appointments was out of the office. *Id.* ¶ 51. Plaintiff begged for medical treatment because he was in severe pain, but Leonardo ordered Plaintiff back to his housing quarters. *Id.* ¶ 55. Plaintiff complained to Parole Officer Lopez, who ordered the Facility to take Plaintiff to the emergency room. *Id.* ¶ 56. Plaintiff was taken to the emergency room, and his surgery was scheduled. Compl. ¶ 57. Hospital staff wrote on his discharge papers that follow-up appointments were vital, and treatment was mandatory. *Id.*

The following day, Plaintiff was summoned to Leonardo's office, and Rivera was present. *Id.* ¶ 58. Leonardo gave Plaintiff a disciplinary report charging him with disorderly behavior based on his pleas for medical help the previous day. *Id.* Plaintiff was sanctioned with loss of visiting privileges for at least two weeks. *Id.* Rivera warned Plaintiff not to complain about the lack of medical treatment, or he would be expelled from the program, his parole would be revoked, and he would face additional retaliation from Morgan. *Id.* ¶ 59. Plaintiff learned Morgan had been an on-site parole officer at the Facility in the past. *Id.* ¶ 64. Based on these threats, Plaintiff did not seek medical treatment, and on November 25, 2024, he successfully completed the program at the Facility and was discharged. *Id.* ¶¶ 61-65. In the meantime, Plaintiff obtained private medical insurance and was placed on a waitlist for specialist care at University Hospital. *Id.* ¶ 66.

Plaintiff then lodged a complaint against Morgan with Parole Legal Aid because he had imposed a condition of parole that prevented Plaintiff from having contact with his son. *Id.* ¶ 67. On March 20, 2025, Plaintiff was summoned to the Parole Office, where he was admonished for

4

his complaints to Parole Legal Aid. *Id.* ¶ 69. Plaintiff relapsed with substance abuse due to Morgan's harassment and Plaintiff's untreated physical pain. *Id.* ¶ 70.

On March 20, 2025, Plaintiff was arrested for parole violations issued by Morgan. *Id.* ¶ 70. Plaintiff's parole violation was based in part on having police contact. *Id.* ¶¶ 72-74. Plaintiff alleges he appropriately contacted the police after three different incidents: first, when a woman—who claimed to know Sprague—trespassed into his home; second, when his rooming house supervisor assaulted him; and third, when another resident at the rooming home repeatedly kicked the locked door to his room. *Id.* Plaintiff received a parole violation for each incident and for his positive drug test. *Id.* ¶ 75.

Plaintiff pleaded with Morgan to permit him to attend his orthopedic appointment prior to returning to a residential facility. *Id.* ¶ 82. Morgan responded, "I don't give a shit. I'm god in your life." *Id.* Plaintiff suffered a panic attack, chest pain, and suicidal ideation. *Id.* ¶ 83. He was then involuntarily admitted to a mental health ward. *Id.* Plaintiff acknowledges that substance abuse is a parole violation but alleges Morgan acted in retaliation for his complaint to Parole Legal Aid, noting most substance abuse parole violations result in mandated outpatient counseling rather than inpatient treatment. *Id.* ¶¶ 78-79. On April 3, 2025, a judge released Plaintiff from involuntary mental health treatment. *Id.* ¶ 84. Morgan informed Plaintiff he would be placed in a community parole program, Volunteers of America ("VOA"), in Camden, New Jersey. *Id.* Plaintiff complained that he could not miss his upcoming medical appointments, and Morgan replied that VOA would meet his needs. *Id.* ¶¶ 86-87. Plaintiff feared he would be medically discharged and miss his appointments. *Id.* Plaintiff alleges Morgan falsely stated in his report that Plaintiff was malingering and manipulating the system to obtain a medical discharge. *Id.* ¶ 88. Plaintiff was medically discharged from VOA on April 22, 2025, because they could not meet his

medical needs.  *Id.* ¶ 90.  Plaintiff missed his scheduled appointments.  Compl. ¶ 91.

On June 17, 2025, Plaintiff was at his residence and Sprague appeared with their son.  *Id.* ¶ 92.  Plaintiff told Sprague she could not be there, and she responded by throwing her shoe in the backyard, kicking him in the leg, bending his finger back, and demanding access to the property.  *Id.* ¶¶ 93–94.  Plaintiff permitted Sprague to go in the backyard to get her shoe.  *Id.* ¶ 94.  Sprague entered the home without permission and accused Plaintiff of having another woman in the house.  *Id.* ¶ 95.  Sprague agreed to leave but refused to take the child with her.  *Id.* ¶ 96.  Plaintiff responded by following Sprague and their son to a bus stop, where Sprague became irate at his refusal to keep their child, slapped Plaintiff, and called the New Jersey State Parole Board and accused him of punching her and knocking her out.  *Id.* ¶ 97.

Newark Police Officers Fernandes, Colon, and Burgos arrived and placed Plaintiff under arrest despite Sprague's lack of injuries, her refusal of medical treatment and domestic-violence assistance, and her refusal to sign a written complaint.  *Id.* ¶ 98.  There were no corroborating witnesses. *Id.*  Officer Fernandes asserted probable cause for arrest based on finding a TRO against Plaintiff by Sprague in the Domestic Violence Registry.  *Id.* ¶ 99.  Plaintiff asserts the registry showed he was the victim of Sprague's domestic violence.  *Id.*  The officers took Plaintiff to the hospital for injuries he suffered from Sprague's actions, but they did not arrest her.  *Id.* ¶¶ 100–101.  Plaintiff was charged with aggravated assault by punching Sprague and rendering her unconscious.  *Id.* ¶ 102.  Morgan and Parole Officer Veronica Erezuma of the New Jersey State Parole Board filed a revocation of parole based on Plaintiff's arrest.  *Id.* ¶ 108.  Plaintiff was released from custody pending court proceedings on the criminal charges, but he was held at Essex County Jail based on the parole revocation.  *Id.* ¶ 109.

The defendants named in the Complaint, in their individual and official capacities, are

Governor Phil Murphy, Lt. Governor Tahesha Way, Attorney General of the State of New Jersey Matthew J. Platkin, New Jersey Department of Corrections Commissioner Victoria Kuhn, Chairman of the New Jersey State Parole Board Samuel J. Plumeri, Jr., Vice Chairman of the New Jersey State Parole Board Ronald L. Slaughter, Lieutenant and District Supervisor of the New Jersey State Parole Board Michael Almonte, Sergeant of the New Jersey State Parole Board Tamahine Rivera, Sergeant of the New Jersey State Parole Board John Morgan, Parole Officer Veronica Erezuma, the Kintock Group, President and CEO of the Kintock Group Walt Simpkins, Members of the Board of Directors of the Kintock Group Paul Tazzines, Gretchen Wisenen, Priya Raqa, and Kathy Mulqueen, Administrator of Newark Operations of the Kintock Group Jennifer Garcia, Director of the Newark Operations for the Kintock Group [Jane Doe] Leonardo, and Medical Director of the Newark Operations of the Kintock Group Nurse [John Doe] Brown.  *Id.* ¶¶ 6–24.  Plaintiff alleges that all defendants were state actors and asserts First, Fourth, Fifth, Eighth and Fourteenth Amendment violations under 42 U.S.C. §§ 1983, 1985, the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, and violations of rights protected by Article I, Paragraphs 1 and 12 of the New Jersey Constitution.  *Id.* ¶ 26.

In Count One of the Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 against all defendants for violation of the Eighth and Fourteenth Amendments.  *Id.* ¶ 14.  The Court construes Count One as alleging failure to provide adequate medical care in violation of the Eighth Amendment, as incorporated against the States by the Fourteenth Amendment.[1]  Count Two of the Complaint is also asserted against all defendants and alleges supervisory liability for inadequate medical care in violation of the Eighth Amendment, as incorporated by the Fourteenth

---

[1] Plaintiff attached his medical records to the Complaint in support of this claim.  Compl. ¶ 111.

7

Amendment.  Also in Count Two, Plaintiff brings state law claims of medical malpractice, intentional infliction of emotional distress and negligence, presumably against all defendants.  In Count Three, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the First Amendment Free Speech Clause, and Due Process violations under the Fifth and Fourteenth Amendments against Morgan, Rivera, and Leonardo.  Plaintiff seeks damages, attorney's fees, declaratory relief, and any other relief.  *Id.* ¶ 19.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1915, this Court may excuse a litigant from prepayment of fees when the litigant "establish[es] that he is unable to pay the costs of his suit."  *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989).  When granting leave to proceed IFP, courts must examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief.  28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

Complaints must be dismissed where they fail to state a claim, a standard identical to the one utilized for motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)).[2]  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[2] The Court's preliminary review pursuant to 28 U.S.C. § 1915 does not determine whether the allegations in the Complaint would survive a properly supported motion to dismiss filed by Defendant after service.  *See Richardson v. Cascade Skating Rink*, No. 19-8935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

*Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 556 (citation omitted).  A court must also draw all inferences in the light most favorable to the plaintiff.  *Phillips*, 515 F.3d at 228.

Moreover, a *pro se* plaintiff's complaint must be liberally construed.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).  When construing a *pro se* plaintiff's complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, *pro se* litigants "cannot flout procedural rules— they must abide by the same rules that apply to all other litigants."  *Id.*

## III.    ANALYSIS

### A.    Eighth Amendment Inadequate Medical Care

Plaintiff brings his Eighth Amendment claims against all Defendants.  For liability under § 1983, a defendant must have personal involvement in the alleged constitutional violation because there is no vicarious liability.  *Iqbal*, 556 U.S. at 676.  The Eighth Amendment protects convicted and sentenced state prisoners from cruel and unusual punishment, including deprivation of medical care for serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Because Plaintiff was subject to institutional confinement as a parolee in a residential reentry program, the Court applies the Eighth Amendment deliberate-indifference framework.  *See Asquith v. Dept' of Corrs.*, 186 F.3d 407, 411 (3d Cir. 1999).  To state a claim, a plaintiff must allege facts showing (1) he has a serious medical need and (2) a defendant's deliberate indifference to that need.  *Id.* (recognizing that residents of halfway houses may remain subject to institutional confinement); *see also Thomas v. City of Harrisburg*, 88 F.4th 275, 283 (3d Cir. 2023) (collecting cases).  A need is serious if it is diagnosed by a physician or obvious to a layperson; deliberate indifference may be shown by an intentional refusal to provide care, an unreasonable delay, or other conduct demonstrating

conscious disregard of a risk.  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff alleges that, after intake at the residential program, he repeatedly notified facility staff of severe left-arm pain and requested imaging and outside evaluation, but staff declined or delayed care for approximately nineteen days.  Compl. ¶¶ 30–36.  He was ultimately transported to University Hospital on October 29, 2024, where x-rays allegedly revealed a radial-head fracture and physicians recommended orthopedic follow-up, including possible surgery.  *Id.* ¶¶ 45–49.  Plaintiff further alleges that he slipped in a facility shower on November 1, 2024, and that staff thereafter characterized his continued requests for care as "disorderly," issuing disciplinary reports rather than facilitating treatment.  *Id.* ¶¶ 50–59.

The Complaint plausibly alleges deliberate indifference as to Nurse Brown, whom Plaintiff identifies as the on-site medical director responsible for responding to his requests for care.  Plaintiff alleges that Nurse Brown repeatedly declined or delayed authorizing diagnostic imaging and outside medical treatment despite ongoing complaints of significant pain.  *Id.* ¶¶ 35–44.  Accepting those allegations as true, Plaintiff has plausibly alleged that Nurse Brown knowingly disregarded a substantial risk to his health, resulting in a prolonged period of untreated fracture and exacerbation of injury following his subsequent fall.  Plaintiff's deliberate indifference claim against Brown shall therefore **PROCEED**.

The claim also proceeds against Leonardo, who is alleged to have directed staff to deny Plaintiff's request for an outside medical trip.  *Id.* ¶¶ 50–54.  A defendant who affirmatively directs subordinates to deny access to medical care may be held liable for deliberate indifference where that directive results in a delay or denial of necessary treatment.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  The allegations against Leonardo sound not in passive

acquiescence but in affirmative interference with access to medical care, insofar as she is alleged to have directed staff to deny Plaintiff outside treatment.  Plaintiff's deliberate indifference claim against Leonardo shall accordingly **PROCEED**.

The Complaint does not plausibly allege Rivera was deliberately indifferent to Plaintiff's need for medical care.  To the contrary, Plaintiff alleges that when Officer Bolesa contacted Rivera after Plaintiff fell and complained of severe pain, Rivera cleared Plaintiff to go to the emergency room.  Compl. ¶ 47. Rivera's later alleged conduct—warning Plaintiff not to complain about the lack of medical treatment or face expulsion, parole consequences, and further retaliation—sounds in retaliation, not in interference with medical care. *Id.* ¶¶ 58–59.  That distinction is dispositive at the screening stage. On the medical-care facts pleaded, Rivera's involvement is therefore not enough to support an Eighth Amendment deliberate-indifference claim.[3] Plaintiff's deliberate indifference claim against Rivera is therefore **DISMISSED** *without prejudice*.

The Court also concludes that the Eighth Amendment claim may not proceed against John Morgan.  Although Plaintiff alleges that Morgan was aware of his medical needs and made statements demonstrating callous disregard—most notably, "I don't give a shit.  I'm god in your life"—Morgan is a parole officer, not a member of Kintock's medical or administrative staff. *See Id.* ¶ 82.  The decisions to deny Plaintiff diagnostic imaging, outside hospital transport, and follow-up care were made by Kintock personnel, principally Nurse Brown and Leonardo.  The Complaint does not plausibly allege that Morgan personally directed or authorized those denials, and § 1983 does not permit vicarious liability.  *See Iqbal, 556 U.S. at 676*.  Accordingly, the Eighth Amendment claim against Morgan is **DISMISSED** *without prejudice*.

---

[3] If a claim is to remain against Rivera at all, it more appropriately rests on the First Amendment retaliation theory, not on deliberate indifference to a serious medical need. *See* Section III.B, *infra* (First Amendment Retaliation).

11

Likewise, Plaintiff's attempt to impose liability on the Kintock Group and the supervisory Defendants (including Walt Simpkins, Paul Tazzines, Gretchen Wisenen, Priya Raqa, Kathy Mulqueen, Phil Murphy, Tahesha Way, Matthew J. Platkin, Victoria Kuhn, Samuel J. Plumeri, Jr., and Ronald L. Slaughter) fails as a matter of law. The Complaint does not identify any policy or custom attributable to the Kintock Group as required under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978), nor does it allege facts showing that any supervisory Defendant was personally involved in the alleged constitutional violation, as required by *Rode*, 845 F.2d at 1207. Plaintiff's deliberate indifference claims against the Kintock Group and the supervisory Defendants is accordingly **DISMISS** *without prejudice*.

To the extent Plaintiff asserts a "failure to train, supervise, audit, or discipline" theory, the Complaint is devoid of any factual allegations establishing deliberate indifference—such as a pattern of similar constitutional violations or prior notice of deficient practices—sufficient to state a plausible claim. Absent such allegations, Plaintiff fails to plead that any Defendant's conduct was the moving force behind the alleged injury. Accordingly, these claims must be dismissed without prejudice. Accordingly, all such claims are **DISMISSED** *without prejudice*.

### B. First Amendment Retaliation

To state a retaliation claim, a plaintiff must allege that (1) he engaged in protected conduct; (2) the government actor's knowledge of that conduct; (3) an adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (4) a causal link between the protected activity and the adverse action. *See Banda v. Corniel*, 682 F. App'x 170, 173–74 (3d Cir. 2017) (per curiam) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). The Complaint presents two cognizable retaliation theories that require separate analysis.

Complaints to an advocacy organization and the filing of grievances constitute protected

activity. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). The alleged temporal proximity and the Complaint's attribution of enforcement filings to specific parole officers permit a plausible inference that the protected conduct was a motivating factor in the adverse parole actions at the screening stage. *See id.* (noting motivation is almost never subject to proof by direct evidence, and plaintiffs can rely on circumstantial evidence, including either an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing that suggests a causal link); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Accordingly, Plaintiff's First Amendment retaliation claim may **PROCEED** against Morgan and Rivera in their individual capacities.

The first theory concerns Morgan's decision to place Plaintiff in inpatient residential treatment at VOA rather than mandating outpatient counseling after Plaintiff's March 2025 positive drug test. Compl. ¶¶ 67–70, 78–79. Plaintiff alleges that inpatient placement was atypical, that Morgan deviated from standard practice, and that the decision came shortly after Plaintiff filed complaints through Parole Legal Aid. *Id.* Although Plaintiff concedes the positive drug test, the question at screening is whether the adverse action was also motivated by protected conduct. The temporal proximity between the Parole Legal Aid complaint and the departure from standard outpatient-treatment protocol, combined with Morgan's alleged pattern of hostility, *see, e.g., id.* ¶ 82 ("I don't give a shit, I'm god in your life"), ¶ 88 ("I'm going to do the same shit again"), permits a plausible inference of retaliatory motive. The retaliation claim therefore **PROCEEDS** as to Morgan in his individual capacity.

The second retaliation theory concerns the parole revocation tied to Plaintiff's arrest on June 17, 2025. Plaintiff contends the revocation was retaliatory because it coincided with his prior Parole Legal Aid complaints. *Id.* ¶¶ 97–108. Specifically, the Complaint further alleges that

13

Rivera responded to Plaintiff's continued complaints by threatening disciplinary consequences, including expulsion from the program and adverse parole implications, if Plaintiff persisted in seeking medical attention. *Id.* ¶¶ 58–59. Such threats, if proven, constitute adverse action sufficient to deter a person of ordinary firmness from exercising his rights. *See Banda*, 682 F. App'x at 174 (finding placement on restricted status and imposition of other restrictions that caused the plaintiff to lose his job was a sufficient adverse action). The temporal proximity and direct linkage between Plaintiff's complaints and Rivera's alleged threats support a plausible inference of causation at this stage. Construed liberally, the allegations permit the reasonable inference that Plaintiff's protected activity was a substantial or motivating factor in Rivera's conduct. Accordingly, the First Amendment retaliation claim may **PROCEED** against Rivera in her individual capacity.

The causal link between the Parole Legal Aid complaint—lodged months earlier—and a revocation directly tied to an arrest following a victim's report of criminal conduct is insufficiently plausible at the screening stage. The intervening basis for the revocation substantially undermines any inference of retaliation. *See Rauser*, 241 F.3d at 333; *Watson*, 834 F.3d at 422. Accordingly, any retaliation theory premised solely on the parole revocation upon Plaintiff's arrest is **DISMISSED** *without prejudice*.

Similarly, the First Amendment retaliation claim may not proceed against Erezuma or Almonte. Although Erezuma is mentioned in the Complaint, the allegations show only that she received communications, and Almonte is mentioned even more peripherally. Neither is sufficiently connected, expressly or otherwise, to the decision-making or authorship of the enforcement filings that allegedly harmed Plaintiff, and consequently neither has the requisite personal involvement in a retaliatory decision. Accordingly, the retaliation claims against

14

Erezuma and Almonte are **DISMISSED** *without prejudice* for failure to plead personal involvement.

Finally, all First Amendment retaliation claims asserted against supervisory or policymaking defendants are **DISMISSED** *without prejudice*. The Complaint does not plausibly allege that a policymaker implemented a policy or that a supervisor personally directed or authorized the contested enforcement actions in a manner that would support individual-capacity liability. Any attempt to reframe these theories must plead, with particularity, facts showing either (a) direct personal involvement in the retaliatory decision-making or (b) a policy, custom, or pattern of prior incidents giving rise to liability. *DeFlaminis*, 480 F.3d at 267.

### C.    Fourth Amendment False Arrest

A § 1983 false arrest claim requires allegations that the arresting officers lacked probable cause to make the arrest. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a reasonable belief that an offense has been committed. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995).

Plaintiff alleges that on June 17, 2025, officers of the Newark Police Department responded to a domestic-incident report at his residence and arrested him based on allegations made by Sprague. Compl. ¶¶ 92–103. According to the Complaint, the underlying dispute involved a confrontation in which Sprague allegedly struck Plaintiff and refused repeated requests to leave, while remaining outside the home with the parties' child. *Id.* Plaintiff further alleges that Sprague contacted parole authorities, including Erezuma, and that information was relayed to the Newark Police Department prior to the officers' response. *Id.* In addition, Plaintiff asserts that Erezuma reported that Plaintiff had assaulted Sprague by punching her and rendering her unconscious, and

15

that this statement was false. *Id.* ¶ 97. Plaintiff also alleges that he informed responding officers that Sprague had been the aggressor. *Id.* ¶¶ 92–103.

Even accepting these allegations as true, the Complaint does not plausibly allege the absence of probable cause. Officers may generally rely on a victim's complaint in determining whether probable cause exists and are not required to resolve credibility disputes between competing accounts before making an arrest. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000). This principle carries special force in the context of reported domestic violence incidents, where, as here, officers are often required to act on rapidly developing information. While the Complaint describes allegations relating to Plaintiff's parole conditions imposed by Morgan, *see*, *e.g.*, Compl. ¶¶ 31-32, the Court expresses no view on the propriety of those conditions; the Complaint itself indicates that Plaintiff was, in fact, in violation of those conditions, which contributed to his ultimate arrest. The Complaint itself also indicates that the arrest followed a report from the alleged victim, which—absent facts suggesting obvious unreliability—may suffice to establish probable cause.

Nor do Plaintiff's allegations regarding the purportedly false statement attributed to Erezuma alter that conclusion. Although knowingly false statements that are material to a probable-cause determination may give rise to a constitutional claim, *see Franks v. Delaware*, 438 U.S. 154, 155 (1978); *Wilson v. Russo*, 212 F.3d 781, 786–89 (3d Cir. 2000), the Complaint does not plausibly allege materiality. Plaintiff does not allege facts showing that the arresting officers relied on the alleged misrepresentation, or that, absent that statement, probable cause would have been lacking—particularly because the victim's report and other information was available to the officers. *See Wilson*, 212 F.3d at 789 (requiring courts to consider whether a "corrected" set of facts would still establish probable cause).

16

Furthermore, the fact that information was transmitted through parole authorities does not undermine probable cause. Law enforcement officers may rely on information relayed by other officials in making probable-cause determinations, absent reason to doubt its reliability. *United States v. Hensley*, 469 U.S. 221, 232 (1985). The Complaint does not plausibly allege that the responding officers were aware of any reason to question the information they received.

Accordingly, because the Complaint does not plausibly allege that the arresting officers lacked probable cause, the false-arrest claim is **DISMISSED** *without prejudice* as to these Defendants. Finally, Plaintiff names the Newark Police Department as a Defendant. "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (citation modified). Claims against the Newark Police Department are therefore **DISMISSED** *with prejudice*.

## IV.    CONCLUSION

For the reasons stated above, the Court's screening dispositions are as follows. Plaintiff's § 1983 Eighth Amendment claim arising from the alleged denial or delay of medical care may **PROCEED** at this stage against Nurse John Doe Brown and Jane Doe Leonardo in their individual capacities. The Eighth Amendment failure to provide medical care claims against John Morgan and Tamahine Rivera are **DISMISSED** *without prejudice* because the Complaint does not plausibly allege their personal involvement in the decisions to deny or delay Plaintiff's medical care. *See* Compl. ¶¶ 33–59.

Plaintiff's First Amendment retaliation claim may **PROCEED** against John Morgan (for VOA placement) and Tamahine Rivera (for the disciplinary report) in their individual capacities.

17

Any retaliation theory premised solely on the parole revocation is **DISMISSED** *without prejudice* for lack of plausible causal nexus. *See id.* ¶¶ 67–76; 84–91.

Plaintiff's Fourth Amendment false-arrest claim is **DISMISSED** *without prejudice* as to Veronica Erezuma, Michael Almonte, Tamahine Rivera, and John Morgan because the Complaint does not plausibly allege that the arresting officers lacked probable cause or that any purportedly false statement was material to the probable-cause determination. *See id.* ¶¶ 92–103; 97; *Wilson*, 212 F.3d at 786–89. Claims against the Newark Police Department are **DISMISSED** *with prejudice* because a municipal police department is not a separate suable entity under § 1983. *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (per curiam) (municipal police department is not a separate entity amenable to suit under § 1983); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

All claims asserted against The Kintock Group and against listed corporate and state supervisory officials—Walt Simpkins, Paul Tazzines, Gretchen Wisenen, Priya Raqa, Kathy Mulqueen, Phil Murphy, Tahesha Way, Matthew J. Platkin, Victoria Kuhn, Samuel J. Plumeri, Jr., and Ronald L. Slaughter—are **DISMISSED** *without prejudice* for failure to plead personal involvement or a cognizable policy/custom giving rise to liability, *Iqbal*, 556 U.S. at 676; and official-capacity monetary claims against state officials are **DISMISSED** *with prejudice* as barred by the Eleventh Amendment, *Monell*, 436 U.S. at 690–94.

Plaintiff is granted leave to file an amended complaint within forty-five (45) days of the date of the accompanying Order to cure the deficiencies identified in this Opinion. Any amended pleading must identify by name any additional individual defendants, allege specific facts showing each defendant's personal involvement in the asserted constitutional violation, and, if asserting municipal or supervisory liability, include factual allegations of contemporaneous knowledge and

18

acquiescence in a constitutional violation or creation or omission of a policy or custom that caused the constitutional injury.

An appropriate Order follows.

Date: May 12, 2026

_Evelyn Padin_
Evelyn Padin, U.S.D.J.